

ROBERT B. SYKES (#3180)
KEVIN M. SHEFF (#8300)
**ROBERT B. SYKES & ASSOCIATES, P.C.**
*Attorneys for Plaintiffs*
311 South State Street, #240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

|  |  |
|---|---|
| MELISSA HARMAN and JUSTIN OVERTON<br><br>   Plaintiffs,<br><br>  v.<br><br>BRENT POLLOCK, SCOTT BARNETT and JOHN AND JANE DOES 1-15,<br><br>   Defendants. | **COMPLAINT**<br><br>(Jury Demanded)<br><br><br>Judge Tena Campbell<br>DECK TYPE: Civil<br>DATE STAMP: 06/23/2003 @ 14:40:12<br>CASE NUMBER: 2:03CV00558  TC |

Plaintiffs Melissa Harman and Justin Overton hereby complain and allege for causes of action against defendants as follows:

### JURISDICTION AND VENUE

1. This action arises under the United States Constitution and federal law, particularly under the provisions of the First, Fourth, and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983, 1985 and 1988.

2.     This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

3.     The claims made in this Complaint occurred and arose in the State of Utah, in the Central Division.  Venue is therefore proper under 28 U.S.C. § 1391.

4.     The amount of controversy herein exceeds the amount of $50,000, exclusive of interest and costs.

## PARTIES

5.     Plaintiffs Melissa Harman and Justin Overton ("plaintiffs") are citizens of the United States of America and were residents of Salt Lake City, County of Salt Lake, State of Utah, at the time of the incident.  Plaintiffs resided at 44½ West 2700 South, Salt Lake City, Utah, at the time of the incident.

6.     On February 12, 2003, and all other relevant times herein, Officers Brent Pollock ("Pollock"), Scott Barnett ("Barnett") and John or Jane Does 1-15 were law enforcement officers employed by the Department of Public Safety, State Bureau of Investigations, City of Salt Lake, State of Utah.

7.     The Utah Department of Public Safety (DPS), not a defendant, is a municipal corporation and is a political subdivision of State of Utah.  As part of its corporate powers, and at all times relevant herein, the State of Utah maintained the State Bureau of Investigations as a Division of the Utah Department of Public Safety.

-2-

Defendant officers are employees of the Utah Department of Public Safety, State Bureau of Investigations.

8.    John and Jane Does 1-15 are employees or officers within the Utah Department of Public Safety, State Bureau of Investigations, the Utah Highway Patrol, or other police agencies who either assisted named defendants in the course of conduct wherein plaintiffs now complain, or are supervisors or other individuals who establish policies, procedures or customs, who may be liable for some of the actions set forth herein. Plaintiffs reserve the right to amend this Complaint to reflect these identities as they become known, or simply to serve notice of their names.

9.    This action is brought against the named individuals in their individual capacities and, where applicable, in their supervisory capacities. Their authority to act was derived from Utah state law and their own authority and/or the commands and directives of their superiors. All of the acts of the individuals and entities listed in the preceding paragraphs were performed under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Utah.

10.    Plaintiffs may in the future serve notice of their claim against the defendants, pursuant to Utah law. This notice, if served, will deal with pendent State claims, which will be amended into this Complaint at a later time. However, plaintiffs deny that notice is required of any of the current claims in this Complaint since all current claims deal with constitutional violations under 42 U.S.C. § 1983 and other statutes, and state law notice of such claims is not required.

-3-

## FACTUAL ALLEGATIONS

11.     On February 12, 2003, Defendant Barnett and approximately nine other DPS employees illegally broke into plaintiffs' residence in Salt Lake City, Utah, and detained plaintiffs in handcuff restraints without cause.

12.     The defendant officers used forced and violent entry into the home, through windows and the front door, which resulted in breaking these entrances and causing excessive property damage.

13.     The defendant officers were all dressed entirely in black, with ski masks covering their faces with the exception of a narrow opening for their eyes.  None of the defendant officers were wearing any visible mark or identification as law enforcement officers.

14.     During the unlawful and warrantless raid on their home and their unlawful detention, plaintiffs were forced by laser-sight firearms into handcuffs, while naked or barely clothed (Justin was completely naked; Melissa was only wearing a small tee shirt and thong underwear).  Plaintiff Harman was extremely frightened and, as a result, urinated on herself as the raid began, to which one officer remarked with disgust, "Jesus Christ!"

15.     Plaintiffs were kept restrained in handcuffs, without clothing, for approximately one hour, as the defendant officers searched through the plaintiffs' home. During this hour, plaintiffs were seated, without clothing, on a couch in the living room and in clear view of all those officers who were searching the premises.  Plaintiff Harman

-4-

had not even been given the opportunity to change out of her wet thong underwear, following her accident (above).

16.     Defendant officers used excessive force on Plaintiff Overton when Overton attempted to assist Plaintiff Harman with the restraint of their dog.  One of the defendant officers violently twisted Plaintiff Overton's arm behind him so that he couldn't move and was nearly thrown to the floor.  Plaintiff Overton was restrained in handcuffs during this incident.

17.     Plaintiffs Harman and Overton were never read their Miranda Rights while in their home and were never presented with a warrant.

18.     Approximately 60 minutes following the commencement of the raid, Plaintiffs Harman and Overton were finally dressed by a male defendant officer and then escorted outside to an unmarked van, where they waited in handcuffs.

19.     Approximately 90 minutes following the commencement of the raid, Plaintiffs Harman and Overton were taken for questioning, separately, by Officer Barnett.  During this questioning, Officer Barnett tape-recorded a series of questions.

20.     Approximately two hours following the commencement of the raid, the handcuff restraints were removed from Plaintiffs Harman and Overton.  When the plaintiffs embraced and became emotional, the defendant officer guarding the plaintiffs continued to treat plaintiffs with unnecessary hostility as he threatened them by saying, "Don't give me a reason to put these back on" (inferring handcuffs).

21. Approximately three and one-half hours following the commencement of the raid, Plaintiffs Harman and Overton were released from custody. Plaintiffs were told not to leave their house. Plaintiff Harman inquired about the property damage and asked if the police would be paying for the damage, to which she was told they would not. One of the defendant officers told the plaintiffs that the plaintiffs had "just been in the wrong place at the wrong time."

22. Plaintiff Harman asked Defendant Barnett for a copy of the warrant. Defendant Barnett refused to provide Plaintiff Harman with a warrant. Following much persistence, Defendant Barnett finally provided his business card to Plaintiff Harman and told her to call him in the next few days.

23. Approximately four hours following the commencement of the raid, Plaintiffs Harman and Overton asked for and received permission to relocate temporarily to a nearby Travel Lodge. As a direct result of the excessive damage done to the front door and windows of plaintiffs' home, it was plaintiffs' opinion that those conditions were unreasonable to live in. Specifically, the front door would not close and could not be locked and the glass from the windows were completely broken out.

24. That morning, Plaintiff Harman contacted their landlord to report the damage to his property and describe the incident which took place there. Both plaintiffs' landlord and Plaintiff Harman tried to reach Defendant Barnett at the telephone number listed on his business card, but found that it had been disconnected.

25.     The following morning, February 13, 2003, Plaintiff Harman finally located a telephone number for Defendant Barnett and reached him to discuss the incident.  Defendant Barnett scheduled a meeting with Plaintiff Harman for later that day.  That afternoon, Plaintiff Harman met with Defendant Barnett in his office, along with the lead investigating officer, Defendant Brent Pollock.

26.     At this meeting, Defendants Barnett and Pollock provided Plaintiff Harman with a copy of a warrant for a different address.  Premises were described on the warrant as: <u>44</u> West 2700 South, South Salt Lake City, Utah, along with other physical description details of this house, none of which describe the premises of plaintiffs' home located at: <u>44½</u> West 2700 South, South Salt Lake City, Utah.

27.     Furthermore, persons described as 'wanted' in connection with the warrant provided to Plaintiff Harman were described as a Hispanic male and female, with accompanying physical description details, none of which describe either Plaintiff Harman or Overton.

28.     Furthermore, vehicles described as 'wanted' in connection with the warrant provided to Plaintiff Harman were described as: 1) 1987 Oldsmobile Cutlass Sedan, and; 2) 1990 Geo Tracker, neither of which describe vehicles belonging to or driven by either Plaintiff Harman or Overton.

29.     On February 14, 2003 the plaintiffs returned to their home, following repairs made to the front door and windows.

30.    Approximately one month following the unlawful, warrantless and violent raid, Plaintiffs Harman and Overton were forced to move out of the house at 44½ West 2700 South because of extreme difficulty sleeping and deep psychological distress from the experience of February 12, 2003. Both Plaintiff Harman and Plaintiff Overton have moved out of the State of Utah.

31.    Defendants Barnett and Pollock did not have any legal justification or excuse for their failure to obtain a search warrant prior to entering plaintiffs' home.

32.    Defendant Barnett, along with many other defendant officers, entered plaintiffs' residence without an arrest warrant, and without probable cause or reasonable suspicion to believe that anyone inside plaintiffs' home had committed a crime.

33.    After Defendant Barnett and the other officers entered plaintiffs' home, other officers arrived on the scene. Defendant Barnett instructed these officers to enter plaintiffs' home, one of them conducting videotaped imagery of the premises, including videotaped imagery of the plaintiffs, who were restrained and unclothed at the time. These late-arriving officers are participants and witnesses to at least a portion of the unlawful activity against plaintiffs and may be added later to this Complaint as their identities become known.

34.    Prior to and up to the point that defendants entered plaintiffs' residence, defendants did not have probable cause to believe a crime had been committed.

-8-

35.     The actions of Defendants Barnett and Pollock demonstrate a deliberate indifference to plaintiffs' constitutional rights.

36.     In order to defend themselves against defendants' unlawful conduct, plaintiffs were compelled to hire a private attorney and incur attorney fees and other legal costs in retaining counsel.

37.     Defendants' violation of plaintiffs' constitutional rights have caused plaintiffs serious personal, emotional and psychological distress.  Defendants' actions were unlawful, demeaning, humiliating, embarrassing and caused extreme mental and emotional distress.

38.     Plaintiffs are entitled to general, compensatory damages for mental suffering and emotional distress in the amount of at least $300,000 each, plus costs of court.

39.     Plaintiffs are entitled to have their attorney awarded attorney fees as a cost of bringing this action, pursuant to 42 U.S.C. § 1988.

40.     Plaintiffs are entitled to punitive damages, as may be allowed by law, against individual defendants whose conduct was willful and malicious and/or showed a knowing and reckless or callous or deliberate indifference to plaintiffs' federally-protected rights.

41.     No immunity defense may be raised by defendants since *inter alia* their conduct, under color of law, has violated plaintiffs' clearly-established

constitutional and statutory rights of which a reasonable person would be aware.  The actions of defendants were objectively unreasonable.

42.     Where a reasonable officer, under the circumstances, would not have entered plaintiffs' residence without a search warrant, arrest warrant, or other legal cause, Defendants Barnett and Pollock and other defendants cannot claim the affirmative defense of qualified immunity.

## FIRST CLAIM FOR RELIEF

### – Entering a Home Without Warrant or Exigent Circumstances –

43.     The allegations contained in paragraphs 1 through 42 are incorporated by reference.

44.     Entering a home without permission, a warrant or exigent circumstances is *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established and well delineated exceptions.  Those who seek exception must show that exigencies of the situation made that course imperative and the burden is on those seeking the exemption to show the need for it.  Absent a warrant, there must be probable cause and/or exigent circumstances which justify entering a home by force.

45.     Defendants Barnett and Pollock authorized the warrantless entry into plaintiffs' home, absent probable cause or exigent circumstances.

46.     Plaintiffs Harman and Overton are law-abiding citizens with no criminal history whatsoever.  There was neither probable cause nor exigent circumstances which would invoke the actions of law enforcement to raid plaintiffs' home.

-10-

47.     Upon entering plaintiffs' home by force, defendant officers found plaintiffs asleep in their bed, unarmed and unclothed.  Plaintiffs behaved with full compliance during the entire incident and did not resist or give reason to believe there could be any exigent circumstance or probable cause to justify their violent and inhumane treatment by law enforcement.

48.     The violation of plaintiffs' rights is actionable under 42 U.S.C. § 1983, and plaintiffs are entitled to judgment against defendants, jointly and severally, under that section for damages in at least the amount of $300,000 each.

49.     Plaintiffs are entitled to attorney fees and costs against the defendants, jointly and severally, under 42 U.S.C. § 1988.

50.     Plaintiffs are entitled to punitive damages against the individual defendants, as allowed by law, since defendants' actions were intentional, wanton, malicious and oppressive.

### SECOND CLAIM FOR RELIEF

### – Unlawful Search and Seizure –

51.     The allegations contained in paragraphs 1 through 50 are incorporated by reference.

52.     Searches conducted without a warrant are presumptively unreasonable, and defendants are therefore required to present evidence of some exception to the warrant requirement contained in the Fourth Amendment to the Constitution of the United States.

-11-

53.     Defendants violated plaintiffs' constitutional right to be free from unlawful searches and seizures in violation of the Fourth Amendment when they unlawfully entered and searched plaintiffs' home.

54.     Defendants violated plaintiffs' constitutional right to be free from unlawful searches and seizures in violation of the Fourth Amendment because their conduct was motivated not by probable cause to arrest, detain, and prosecute, but by poor intelligence and indolent follow-through.

55.     The unlawful detention of plaintiffs at the hands of the defendants was an unreasonable and unlawful seizure in violation of the Fourth Amendment to the United States Constitution, in that it was without probable cause and accomplished by the use of excessive force.

56.     Defendants acted under the color and pretense of Utah state law.

57.     Defendants had no probable cause to believe plaintiffs had committed, or were about to commit, a crime.

58.     Even if defendants possessed probable cause sufficient to justify plaintiffs' arrest and detention, no exigent circumstances existed which would have permitted defendants to enter plaintiffs' residence.

59.     Even if probable cause and exigent circumstances existed at the time defendant officers entered plaintiffs' home, defendants exceeded the scope of their search when they searched through plaintiffs' bedroom, kitchen and other areas not reasonably related to the confinement of those suspects wanted and identified in connection with

-12-

the warrant for a different and distinct residence.  Defendants exceeded their scope of authority by apprehending plaintiffs and holding them in custody for an excessive period of time, even following the apprehension of those suspects identified in the warrant. These actions demonstrate further the improper and illegal actions of defendants, in particular those in a supervisory or authority position.

60.    Defendants knew that their actions violated plaintiffs' right to be free from unlawful searches and seizures but proceeded to violate their rights anyway.

61.    As a direct and proximate result of defendants' actions, plaintiffs were deprived of their right to liberty, to be secure in their person against unlawful and unreasonable seizure, to equal protection of the laws, to due process, to free speech, and to petition the government for redress of grievances in violation of the First, Fourth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983. As a consequence, plaintiffs have suffered damages and will suffer additional damages in the future in an amount to be determined at trial.

62.    The violation of plaintiffs' rights is actionable under 42 U.S.C. § 1983, and plaintiffs are entitled to judgment against defendants, jointly and severally, under that section for damages in at least the amount of $300,000 each.

63.    Plaintiffs are entitled to attorney fees and costs against the defendants, jointly and severally, under 42 U.S.C. § 1988.

64.    Plaintiffs are entitled to punitive damages against the individual defendants, as allowed by law, since defendants' actions were intentional, wanton, malicious and oppressive.

### THIRD CLAIM FOR RELIEF

#### – Unlawful and Degrading Detention –

65.    The allegations contained in paragraphs 1 through 64 are incorporated by reference.

66.    Requests for the provision of clothing by a person in custody that go ignored or unheeded, which leave the detainee unreasonably degraded or humiliated or that cause an undue invasion of privacy, are in violation of the Fourth Amendment.

67.    The conduct of Defendants Barnett and Pollock, and those other officers who raided plaintiffs' home on February 12, 2003, was in gross violation of plaintiffs' right to be clothed during detention under the Fourth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

68.    Plaintiffs Harman and Overton were left unclothed for approximately one hour, following the commencement of the raid.  Plaintiff Overton was completely naked, with no clothing on his body at all.  Plaintiff Harman was barely clothed in a small tee shirt and thong underwear.

69.    Defendant officers further violated plaintiffs' rights under the Fourth Amendment by intentionally inflicting humiliation, embarrassment and shame with comments made because of Plaintiff Harman's accidental urination.

-14-

70.     Defendant officers further violated Plaintiff Harman's rights under the Fourth Amendment when they did not allow her to change her underwear, which was wet from her accidental urination at the commencement of the raid.   This unreasonably degrading element of Plaintiff Harman's detention created further humiliation and embarrassment for Plaintiff Harman and further violated her Fourth Amendment rights.

71.     The violation of plaintiffs' rights is actionable under 42 U.S.C. § 1983, and plaintiffs are entitled to judgment against defendants, jointly and severally, under that section for damages in at least the amount of $300,000 each.

72.     Plaintiffs are entitled to attorney fees and costs against the defendants, jointly and severally, under 42 U.S.C. § 1988.

73.     Plaintiffs are entitled to punitive damages against the individual defendants, as allowed by law, since defendants' actions were intentional, wanton, malicious and oppressive.

### FOURTH CLAIM FOR RELIEF

**– Illegal Search of the Wrong Residence in Violation
of the Fourth Amendment –**

74.     The allegations contained in paragraphs 1 through 73 are incorporated by reference.

75.     The authority of police officers to search premises that are described in a warrant is not unlimited.  If, prior to or during a search, officers become aware that

a warrant describes multiple residences, officers must confine their search to the residence of the suspect. The law is well established that officers conducting a search of premises are required to discontinue a search as soon as they discover they are in other, separate units and were on notice of the risk that they might be in a portion of property erroneously included within the terms of a warrant.

76.     Defendants Barnett and Pollock have provided a copy of the warrant used in connection with the raid they authorized at plaintiffs' home, which clearly identifies and describes a property not occupied by plaintiffs, but located in close proximity to plaintiffs' home.

77.     Defendants Barnett and Pollock conspired and authorized the raid at plaintiffs' home with clear knowledge that plaintiffs' home was a separate and distinct residence, separate and apart from those premises described in the warrant.

78.     The violation of plaintiffs' rights is actionable under 42 U.S.C. § 1983, and plaintiffs are entitled to judgment against defendants, jointly and severally, under that section for damages in at least the amount of $300,000 each.

79.     Plaintiffs are entitled to attorney fees and costs against the defendants, jointly and severally, under 42 U.S.C. § 1988.

80.     Plaintiffs are entitled to punitive damages against the individual defendants, as allowed by law, since defendants' actions were intentional, wanton, malicious and oppressive.

## FIFTH CLAIM FOR RELIEF

### – Punitive Damages and Supervisor Liability of Defendants –

81.    The allegations contained in paragraphs 1 through 80 are incorporated by reference.

82.    Defendant Pollock is an Officer of the Department of Public Safety, State Bureau of Investigations.

83.    Defendant Pollock is responsible for the investigation which prompted the warrant used in connection with the raid at plaintiffs' different address.

84.    Defendant Pollock had prior knowledge, by personal inspection, of the property and premises described on the warrant as <u>44</u> West 2700 South, South Salt Lake City, as a result of his prior investigation.

85.    Defendant Pollock provided Affidavit under oath to request and secure the "no-knock" search warrant which was used in connection with the unlawful raid at plaintiffs' home.  Having full knowledge that such search warrant did not include the premises at <u>44½</u> West 2700 South, South Salt Lake City, Utah, Defendant Pollock's authorization and order to raid this address was a direct breach and violation of plaintiffs' constitutional rights.    Defendant Pollock knew he was sending law enforcement to raid plaintiffs' home unlawfully.

86.    Defendant Pollock's conduct amounts to gross negligence, recklessness, deliberate indifference, and/or deliberate misconduct which directly caused in the injuries suffered by plaintiffs.

87.     Defendant Barnett and other defendants acted with gross negligence, recklessness, deliberate indifference, and/or deliberate misconduct in organizing, planning and executing this raid, as set forth in the statement of facts above.

88.     As a direct and proximate result of the unlawful and malicious acts and omissions of Defendant Pollock and the other defendants, plaintiffs were deprived of their right to be secure in their person against unlawful and unreasonable seizure and to equal protection of the laws, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S. § 1983.

89.     The violation of plaintiffs' rights are actionable under 42 U.S.C. § 1983, and plaintiffs are entitled to judgment against the defendants, jointly and severally, under that section, in the amount of at least $300,000 each, plus costs.

90.     Plaintiffs are entitled to attorney fees and costs against the defendants, jointly and severally, under 42 U.S.C. § 1988.

91.     Plaintiffs are entitled to punitive damages against individual defendants, as allowed by law.

### SIXTH CLAIM FOR RELIEF

#### – Failure to Instruct, Supervise, Control and Discipline –

92.     The allegations contained in paragraphs 1 through 91 are incorporated by reference.

93.     At all times relevant to this Complaint, Defendants Barnett and Pollock and other John Doe supervisors, as police officers or supervisors of the Department of Public Safety, were acting under the direction and control of the State of Utah, which acted through its agents and employees who were responsible for training and policy-making for its officers and operations.  Defendants Barnett, Pollock and other supervisors were acting pursuant to either official policy or the practice, custom, and usage of the Department.

94.     Acting under color of law, by and through the policy-makers of the State of Utah, and pursuant to official policy or custom and practice, the defendants intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of the State of Utah failed to instruct, supervise, train, control and/or discipline on a continuing basis other officers and defendants in the performance of their duties to refrain from: (a) ordering or authorizing the illegal entry into a private citizen's home, with full knowledge of no probable cause or exigent circumstances; (b) conspiring to violate the rights, privileges, and immunities guaranteed to plaintiffs by the Constitution and laws of the United States and the laws of the State of Utah; and (e) otherwise depriving citizens like plaintiffs of their constitutional and statutory rights, privileges, and immunities.

95.     These supervisory personnel, had they diligently exercised their duties to instruct, supervise, control, train and discipline on a continuing basis, would have had knowledge that the wrongs that were done by Defendants Barnett and Pollock

-19-

and others, or other unlawful or unconstitutional acts, were likely to be committed. Agents of the State of Utah had the power to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, or with deliberate indifference to the rights of the inhabitants of the State of Utah, failed or refused to do so.

96.     The persistent practice of these defendants in failing to hire, monitor, and properly discipline employees in the Department of Public Safety constitutes State policy even though the conduct may be carried out by subordinate employees. The supervisors' liability may thus be based on a series of decisions by subordinate officials manifesting a custom or usage, of which a supervisor knew or should have known about. The supervisors of Barnett and Pollock may bind the State inasmuch as the supervisor sees nothing wrong with defendants' conduct and considers these defendants to be capable employees who perform their job duties in a satisfactory manner.

97.     The violation of plaintiffs' rights are actionable under 42 U.S.C. § 1983 and plaintiffs are entitled to judgment against the defendants in the amount of at least $300,000 each, plus costs and attorney fees pursuant to 42 U.S.C. § 1988.

## SEVENTH CLAIM FOR RELIEF

### – Unlawful Use of Excessive Force By Defendants –

98.     The allegations contained in paragraphs 1 through 97 are incorporated by reference.

99.    Under the Fourth Amendment, the most important single element in analyzing the reasonableness of force is whether a suspect posed an immediate threat to the safety of officers or others.  The proper focus in determining the reasonableness or not of force used is on events *immediately* confronting officers when they decide to use force.  The Fourth Amendment dictates that force is not reasonable when a suspect is non-violent and poses no threat and force is not permitted at all when there is no need to use force.

100.    Under the Fourth Amendment, pointing a gun at someone may constitute excessive force and police officers do not have the right to shove, push or otherwise assault innocent persons without any provocation.  In fact, unprovoked pushes and shoves give rise to liability.

101.    It is clear that Plaintiffs Harman and Overton were in a position of total compliance, as plaintiffs were found asleep in their bed at the time of the raid.

102.    Defendant officers clearly used excessive force when plaintiffs were presented with tremendous and severe fear with approximately ten heavily-armed SWAT officers breaking into their home by force, charging on their persons and pointing laser-guided sight firearms at their heads and bodies.

103.    Defendant officers continued to hold plaintiffs in custody, handcuffed and at gunpoint for an excessive period of time, approximately one hour.

104.    One of the unnamed defendant officers used excessive force as he twisted Plaintiff Overton's arm behind his back and forced him to the floor.  This act

-21-

was unprovoked, as Plaintiff Overton was merely trying to assist Plaintiff Harman with the restraint of their dog.

105. The violation of plaintiffs' rights is actionable under 42 U.S.C. § 1983, and plaintiffs are entitled to judgment against defendants, jointly and severally, under that section for damages in at least the amount of $300,000 each.

106. Plaintiffs are entitled to attorney fees and costs against the defendants, jointly and severally, under 42 U.S.C. § 1988.

107. Plaintiffs are entitled to punitive damages against the individual defendants, as allowed by law, since defendants' actions were intentional, wanton, malicious and oppressive.

### EIGHTH CLAIM FOR RELIEF

#### – Unlawful Destruction of Property –

108. The allegations contained in paragraphs 1 through 107 are incorporated by reference.

109. Even if the defendant officers had a legal warrant to justify immediate entry into plaintiffs' home, this method is only allowed under the Fourth Amendment when that can be done without any physical destruction of the property. The Fourth Amendment clearly indicates that the destruction of property during a search conducted with a warrant may violate the Fourth Amendment if it is not reasonably necessary to effectively execute a search warrant.

110.   Defendant officers demonstrated total disregard for the plaintiffs' property, as they broke into the bedrooms windows with battering rams and broke down the front door.  This forcible entry into the plaintiffs' premises by the defendants was in direct violation of plaintiffs' constitutional and civil rights pursuant to the Constitution of the United States.

111.   Plaintiffs are entitled to damages for loss of personal property.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray judgment against defendants as follows:

1.      For general compensatory damages in an amount not less than $300,000 for each plaintiff;

2.      For special damages as are shown at trial;

3.      For punitive damages against named individuals as may be allowed by law;

4.      For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

5.      For plaintiffs' costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. § 1988; and

6.      For such other and further relief as the Court deems just and proper.

DATED this 23rd day of June, 2003.

ROBERT B. SYKES & ASSOCIATES, P.C.,

ROBERT B. SYKES
KEVIN M. SHEFF
Attorneys for Plaintiffs

Q:\Q Data\CLIENT\1806\P\Complaint.wpd